IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JERRY K. REED, #48964-080 | § | |
|     Movant, | § | |
| | § | |
| v. | § | No. 3:18-cv-0552-B (BT) |
| | § | No. 3:13-cr-0481-B-6 |
| UNITED STATES OF AMERICA, | § | |
| Respondent. | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Movant Jerry K. Reed, a federal prisoner, filed a *pro se* motion to vacate, set-aside, or correct his sentence under 28 U.S.C. § 2255. The District Court referred the resulting civil action to the United States magistrate judge pursuant to 28 U.S.C. § 636(b) and a standing order of reference. For the following reasons, the Court should deny the motion.

I.

On September 30, 2015, pursuant to a plea agreement, Reed pleaded guilty to conspiracy to unlawfully distribute a controlled substance, in violation of 21 U.S.C. § 846. (Crim. Doc. 483).[1] The District Court sentenced Reed to 216 month's imprisonment. (Crim. Docs. 436, 473). Reed filed a direct appeal, and the Fifth Circuit affirmed his conviction and sentence on March 20, 2017. *See United States*

---

[1] When referencing the docket, the Court will designate the Criminal Action No. 3:13-cr-481-B-6 as "Crim. Doc."

*v. Reed*, 682 F. App'x 308 (5th Cir. 2017). He did not file a petition for a writ of certiorari. (Doc. 2 at 2).

On March 9, 2018, the Court received Reed's timely-filed § 2255 motion. (Doc. 2). In his motion, Reed argues that the Court erred by not holding a competency hearing, and that his plea was involuntary. (*Id.* at 5, Doc. 4 at 1). He also argues that his trial and appellate counsel provided ineffective assistance. (Docs. 2 at 4, 6-8; 4 at 1-2). The government filed a response arguing Reed's claims lack merit, (Doc. 22), and Reed filed a reply (Doc. 37). Thus, the § 2255 motion is fully-briefed and ripe for determination.

## II.

Reed first argues that the trial court violated his right to due process by "fail[ing] to evaluate and see if he was able to make a competent plea." (Doc. 15 at 5). Reed states that he had been shot in the head prior to his arrest, had undergone "extensive head operations," and was taking medication at the time of the criminal proceedings. (*Id.*) Reed states that because of his head injury, he was unable to meaningfully participate in the criminal proceedings. (Doc. 2 at 5). He argues that the trial court had reason to believe "that something was amiss . . . because of [his] continuous controversies with his defense counsels [and] should have *sua sponte* ordered a hearing to examine [him] due to his impairments." (Doc. 15 at 5). Reed provides no medical documentation or specific in-court instances to support his claim.

Reed's argument relies solely on his general statements. He does not point to any evidence in the record to support his contention. Conclusory allegations are insufficient to raise a constitutional issue in a habeas proceeding. *Smallwood v. Johnson*, 73 F.3d 1343, 1351 (5th Cir. 1996) (quoting *Ross v. Estelle*, 694 F.2d 1008, 1011-12 (5th Cir. 1983)); *see also Woods v. Cockrell*, 307 F.3d 353, 357 (5th Cir. 2002).

Further, the Court finds nothing in the record to warrant questioning Reed's mental competency. "In determining whether the court should order a [competency] hearing, the court must consider three factors: (1) the existence of a history of irrational behavior, (2) the defendant's demeanor at trial, and (3) prior medical opinion on competency." *United States v. Ruston*, 565 F.3d 892, 902 (5th Cir. 2009). The record demonstrates that on February 15, 2014, when the police responded to an emergency call, they encountered Reed "mumbling words" but were unable to understand Reed. (Crim. Doc. 330-1 at 22 ¶76). The police later determined that Reed had been shot in the forehead. (*Id.*). Reed reported that he remained in the hospital in intensive care for approximately one month and still takes daily medication for the injury. (*Id.* at 24 ¶88). At his initial hearing, Reed participated fully and when asked if he was "mentally okay so that [he] understands these proceedings, Reed replied, "Pretty much so." (Crim. Doc. 489 at 3). He also confirmed that although he was taking medication, there was nothing about the medication that would cause him difficulty in understanding the charges

against him. (*Id.* at 3-4). Finally, Reed stated he had seen and understood the indictment against him, and pleaded not guilty. (*Id.* at 4).

Additionally, Reed's initial counsel filed a motion to withdraw. (Crim. Doc. 134). In that motion, while counsel discussed the lengthy meetings he conducted with Reed, he does not question Reed's competency or ability to participate in his own defense. (*Id.*). And at the change of plea hearing, Reed's new attorney affirmed that he was "satisfied that [Reed] is competent, that he understands the charges in the indictment as well as the [current] proceedings." (Crim Doc. 483 at 4). Finally, Reed fully-participated at the change of plea hearing, (*see* Crim. Doc. 483); Reed confirmed he understood the charges against him and announced his intention to plead guilty to those charges. (*Id.* at 3). The facts before the trial court do not raise a bona fide doubt concerning Reed's competency such that a hearing would have been warranted. Thus, this claim fails. *See Enriquez v. Procunier*, 752 F.2d 111, 113 (5th Cir. 1984) (citing *Pate v. Robinson*, 383 U.S. 375 (1966)) (stating that to give rise to a defendant's right to a competency hearing, the facts before the trial court must first raise "a bona fide doubt concerning competency").

### III.

Next, Reed argues that he was induced to plead guilty through "misrepresentations" and "unkept promises," by both his counsel and the government. (Doc. 4 at 1; Doc. 15 at 11, 13-14). Specifically, he argues that his counsel and the government promised he would receive a five- to seven- year prison sentence if he would cooperate with the government, plead guilty, and

convince his brother (a co-defendant) to plead guilty as well. (Doc. 15 at 13). He argues that this invalidates his guilty plea. (Doc. 15 at 11).

Reed provides no support from the record for this argument. Acknowledging that there is no evidence in the record for the claim, Reed asks the Court to look at the "totality of the circumstances" surrounding his plea. (*See id.* at 14). Federal courts do not "consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition . . . mere conclusory allegations do not raise a constitutional issue in a habeas proceeding." *Smallwood*, 73 F.3d at 1351 (quoting *Ross*, 694 F.2d at 1011-12); *see also Lookingbill v. Cockrell*, 293 F.3d 256, 263 (5th Cir. 2002) (stating that where a habeas petitioner fails to brief an argument adequately, it is considered waived).

Further, Reed's claim is refuted by the record. Reed's plea agreement states that he "fully understands that the actual sentence imposed . . . is solely in the discretion of the Court." (Crim Doc. 262 at 2). The agreement further states that his "plea of guilty is freely and voluntarily made and is not the result of force, or threats, or of promises apart from those set forth in this plea agreement. There have been no guarantees or promises from anyone as to what sentence the Court will impose." (*Id.* at 4-5). And neither Reed's plea agreement, nor supplement to the plea agreement contain any promise to recommend a particular sentence length. (*See* Crim. Doc. 262; Crim. Doc. 263). "Official documents – such as a written plea agreement – are 'entitled to a presumption of regularity and are

5

accorded great evidentiary weight.'" *United States v. McDaniel*, 907 F.3d 366, 371 (5th Cir. 2018) (quoting *Hobbs v. Blackburn*, 752 F.2d 1079, 1081 (5th Cir. 1985)).

Additionally, at his change of plea hearing, Reed acknowledged that he had reviewed the plea agreement and plea agreement supplement with his counsel, and that he understood those plea documents. (Crim. Doc. 483 at 9). He further acknowledged that the plea agreement and supplement "embody the entirety of the plea agreement" Reed made in this case. (Crim. Doc. 483 at 8-9). Reed also acknowledged that he was pleading guilty freely and voluntarily and that no one had made any promises, other than the promises in the plea agreement and supplement, to induce him to plead guilty. (*Id.* at 15). Formal declarations in open court carry a strong presumption of truth. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977). And "a defendant ordinarily will not be heard to refute [his] testimony given at a plea hearing while under oath." *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998). In order to overcome his valid plea documents and testimony, Reed must prove "(1) the exact terms of the alleged promise, (2) exactly when, where, and by whom the promise was made, and (3) the precise identity of an eyewitness to the promise." *Id.* But Reed fails to meet this burden, (*see* Doc. 4 at 1; Doc. 15 at 11, 13-14); thus, his argument must fail.

To the extent that Reed couches this claim as one of ineffective assistance of counsel, it still provides him no relief. Reed fails to allege prejudice. He simply cites the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984), for evaluating ineffective assistance of counsel claims. (Doc. 15 at 11). Reed

altogether fails to "affirmatively prove prejudice," and this is fatal to his claim. *See Strickland*, 466 U.S. at 693.

## IV.

Reed further argues that the Court erred in applying a dangerous weapon enhancement under United States Sentencing Guideline § 2D1.1(b)(1), because the facts did not warrant the enhancement. (Doc. 15 at 12). He contends that this created an incorrect sentencing guideline range. (*See id.*). Reed's argument attacks the Court's application of the advisory sentencing guidelines and he cannot raise this type of challenge in his Section 2255 motion. "Section 2255 motions may raise only constitutional errors and other injuries that could not have been raised on direct appeal that will result in a miscarriage of justice if left unaddressed. Misapplications of the Sentencing Guidelines fall into neither category and hence are not cognizable in [section] 2255 motions." *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999).

## V.

Reed also raises numerous claims that his trial and appellate counsel provided ineffective assistance. To succeed on a claim of ineffective assistance of counsel, a movant must first show "counsel's representation fell below an objective standard of reasonableness," with reasonableness judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. The standard requires the reviewing court to give great deference to counsel's performance, strongly presuming counsel exercised reasonable professional

judgment. *Id.* The right to counsel does not require errorless counsel; instead, a criminal defendant is entitled to reasonably effective assistance. *Boyd v. Estelle*, 661 F.2d 388, 389 (5th Cir. 1981); *see also Rubio v. Estelle*, 689 F.2d 533, 535 (5th Cir. 1982); *Murray v. Maggio*, 736 F.2d 279 (5th Cir. 1984).

Secondly, a movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. The movant must "affirmatively prove," not just allege, prejudice. *Id.* at 693. If he fails to prove prejudice, the court need not address the question of counsel's performance. *Id.* at 697. Merely presenting "conclusory allegations" of deficient performance or prejudice is insufficient to meet the *Strickland* test. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000).

A.

Reed asserts that his trial counsel provided ineffective assistance by failing to file a motion to withdraw his guilty plea. (Doc. 2 at 4). He states that after pleading guilty, but before the sentencing hearing, he informed his counsel that he wished to withdraw his plea, but that his counsel failed to file a motion to withdraw the plea, and advised Reed against withdrawing his plea. (Doc. 15 at 1-4).

Reed's claim fails because he does not affirmatively demonstrate any prejudice. He simply avers that "his defense counsel's failure to honor his request prevented the Court from realizing that issues were present in regards to [Reed's]

8

plea and representation." (*Id.* at 4). Presenting only "conclusory allegations" of deficient performance or prejudice is insufficient to meet the *Strickland* test. *See Mille*, 200 F.3d at 282.

B.

Reed also claims that because his counsel declined to file a motion to withdraw the plea, counsel had a conflict of interest. (Doc. 15 at 4, 14-17). But Reed fails to demonstrate an actual conflict. To demonstrate a conflict of interest, Reed must show that "an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan*, 446 U.S. 335, 248 (1980). A conflict exists when an attorney represents two or more clients who have different interests in the outcome of the proceeding. *See United States v. Moore*, 37 F.3d 169, 173 (5th Cir. 1994) (stating that "a conflict exists when defense counsel places himself in a position conducive to divided loyalties"). And to prevail on an ineffective-assistance-of-counsel claim due to a conflict of interest, Reed must prove that "his counsel labored under an actual conflict of interest that adversely affected his performance at trial." *United States v. Palacios*, 928 F.3d 450, 455 (5th Cir. 2019) (internal quotations omitted).

Here, Reed fails to show that his counsel had an actual conflict. He simply directs the Court to a general statement his counsel made at the sentencing hearing regarding disagreements between him and his counsel. (Doc. 15 at 4). This is insufficient to demonstrate Reed's counsel had divided loyalties. Additionally, Reed completely fails to show that, even if his counsel had labored under divided

loyalties, it adversely affected his counsel's performance. This is insufficient. *Palacios*, 928 F.3d at 455.

Because Reed fails to demonstrate that his counsel had an actual conflict of interest, his cursory claim that the Court erred in denying counsel's motion to withdraw, due to the supposed conflict, (Doc. 4 at 2), necessarily fails as well. Additionally, Reed's argument is conclusory and lacks any support from the record. He simply states that "the Court only heard from the defense counselor and the prosecutor, but denied the motion without addressing the defendant." (*Id.*). Federal courts do not "consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition . . . mere conclusory allegations do not raise a constitutional issue in a habeas proceeding." *Smallwood*, 73 F.3d at 1351 (quoting *Ross*, 694 F.2d at 1011-12); *see also Lookingbill*, 293 F.3d at 263 (stating that where a habeas petitioner fails to brief an argument adequately, it is considered waived).

C.

Next, Reed claims his counsel provided ineffective assistance by "never inform[ing] him of any plea negotiations that he was having with the Prosecutor." (Doc. 15 at 7). He appears to claim that his counsel failed to advise him of a plea offer that did not include the application of a penalty enhancement for his prior conviction. (*See id.*).

Reed provides nothing but his conclusory allegation. In an attempt to support his allegation, Reed cites to the prosecutor's statement at a pre-trial

hearing in which she states that she and Reed's attorney had been "engaging in plea negotiations," and that she had "held off" filing an enhancement for Reed's prior conviction, in an effort to facilitate those plea negotiations. (Doc. 15 at 7, citing Crim. Doc. 474 at 23-24). However, this general discussion regarding plea negotiations does not demonstrate that there was a plea agreement and that Reed's counsel withheld that agreement from him. Reed's "conclusory allegations" are insufficient. *See Miller*, 200 F.3d at 282.

Further, when a defendant alleges that he was prejudiced by his counsel's ineffective advice regarding a plea offer, a defendant must show that:

> [B]ut for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Lafler v. Cooper*, 566 U.S. 156, 164 (2012).

Here, Reed fails to meet the requirements to demonstrate prejudice. He does not identify any of the terms of the agreement he faults his attorney for not presenting, nor does he show a reasonable probability that had such agreement been submitted to the Court, the Court would have accepted it and that the conviction or sentence would have been less severe. (*See* generally Docs. 2 at 6-7; 15 at 6-9). Thus, Reed has failed to demonstrate his attorney provided ineffective assistance on this claim. *Lafler*, 566 U.S. at 164.

11

D.

Reed also contends that his attorney provided ineffective assistance by failing to inform him of the maximum sentence he faced due to the sentencing enhancement for a prior conviction. (Doc. 15 at 7). He alleges that his counsel informed him that he faced a maximum possible sentence of ten years' imprisonment, when the actual maximum sentence was twenty years of imprisonment, (*see id.*), and that he did not learn until two days prior to sentencing that his maximum possible sentence was twenty years' imprisonment. (*See id.* at 8).

Reed's claim is belied by the record, which demonstrates that Reed understood the maximum punishment he faced and the applicability of the sentence enhancement prior to pleading guilty. Reed's plea agreement stated that the maximum term of imprisonment for his conviction was "imprisonment for a period not more than twenty years." (Crim. Doc. 262 at 2). Reed further affirmed in the agreement that he had "received from his lawyer explanations satisfactory to him concerning each paragraph of this agreement, each of his rights affected by this agreement, and the alternatives available to him other than entering into this agreement." (*Id.* at 5). Additionally, at his change of plea hearing, when discussing the punishment range, the Court stated to Reed, "Paragraph 3 then at the top of page 2 of the plea agreement, that was also read here a few minutes ago. That explains the range of punishment that applies to this Count One of the indictment to which you have told me that you will plead guilty. And do you understand this

entire range of punishment?" (Crim. Doc. 483 at 10). Reed replied that he understood the range of punishment. Reed then verified that he understood that the "range of punishment stated in the plea agreement [was] the same range of punishment with the enhancement." (*Id.*). Reed's declarations in open court carry a strong presumption of truth. *Blackledge*, 431 U.S. at 74.

Thus, the record demonstrates that Reed acknowledged that his counsel fully apprised him of his maximum sentence exposure prior to pleading guilty, and his conclusory allegations to the contrary are insufficient to demonstrate ineffective assistance of counsel. *See Miller*, 200 F.3d at 282.

E.

Lastly, Reed alleges his appellate counsel provided ineffective assistance by failing to address the drug amount finding, the Court's authority to depart, or the objections that were originally raised at the sentencing hearing. (Doc. 15 at 9-10).

A counsel's performance on appeal is judged under the two-prong *Strickland* test. *See Green v. Johnson*, 160 F.3d 1029, 1043 (5th Cir. 1998). And "[o]n appeal, effective assistance of counsel does not mean counsel who will raise every nonfrivolous ground of appeal available." *Id.* "Rather, it means, as it does at trial, counsel performing in a reasonably effective manner." *Id.* To demonstrate prejudice, a petitioner must "show a reasonable probability that, but for his counsel's unreasonable failure . . ., he would have prevailed on his appeal." *Briseno v. Cockrell*, 274 F.3d 204, 207 (5th Cir. 2001) (citations omitted). Although it is "possible to bring a *Strickland* claim based on counsel's failure to raise a particular

13

claim . . . it is difficult to demonstrate that counsel was incompetent." *Smith v. Robbins*, 528 U.S. 259, 288 (2000).

Here, Reed provides only a cursory argument regarding this claim. In his Section 2255 motion he states that his appellate counsel failed to raise on appeal the issues of "the drug amount finding, the dangerous weapon possession enhancement, role adjustment and others," as well as his "assistance to the government." (Doc. 2 at 8). In his memorandum in support of his motion, he simply states that "appellate counsel didn't raise any of the objections that were made in the District Court," and argues that "appellate counsel proved to be ineffective by abandoning his issues on appeal." (Doc. 15 at 10). Reed's conclusory allegations are insufficient. *Miller*, 200 F.3d 282.

And because Reed does not even address *Strickland*'s prejudice prong, he likewise fails to "affirmatively prove prejudice." This is insufficient to warrant relief. *See Strickland*, 466 U.S. at 693.

## VI.

Finally, Reed requests an evidentiary hearing. (Doc. 37 at 1). But Reed is not entitled to an evidentiary hearing. "When the files and records of a case make manifest the lack of merit of a section 2255 [motion], the trial court is not required to hold an evidentiary hearing." *United States v. Hughes*, 635 F.2d 449, 451 (5th Cir. 1981); *see also Cervantes*, 132 F.3d at 1111 (movant was not entitled to an evidentiary hearing because he did not meet his burden of proof under section

2255). Because Reed's claims lack merit for the reasons stated above, no evidentiary hearing is required in this section 2255 proceeding.

VII.

The Court should deny the § 2255 motion for failure to make a substantial showing of the denial of a federal right.

Signed January 30, 2020.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).